Good morning, and may it please the Court, I'm Philip Brooks, representing Mr. Gulledge. Based on the opinion of the District Court in this case, Your Honors, it's our position that the Crawford error as an error is clearly shown, and there's really no need to discuss that further this morning unless the Court thinks otherwise. My intention is to turn immediately to the question of whether the error was harmless or not. That was a finding by the State Court as well as the District Court, right? That it was harmless. I mean, but it was a violation of Crawford. Well, the State Court didn't find it was a violation of Crawford because Crawford hadn't been decided yet, but it found there was Same principles, violation of the Confrontation Clause. Right. Although the difference between the State Court opinion and the District Court opinion is that the District Court identified much larger portions of the confessions that were subject to the Confrontation Clause. The State Court of Appeal for California said that only certain isolated portions of the statements were inadmissible, and the rest of the confessions were just fine. The District Court, we think, has demonstrated why that was incorrect and why it was actually the entirety of the confessions that was inadmissible as to Mr. Gulledge. The statements given didn't actually inculpate your client by name, did they? No, they didn't mention him by name. But, of course, as I think the District Court has correctly analyzed in this case, in the first place, every crime that was charged here was charged with a concert clause, and every crime was charged with an aiding and abetting clause, so that if a fact that made one of the other co-defendants guilty tended to establish an element of the crime as to Mr. Gulledge, as to aiding and abetting, as to the concert clause. So, at least as to that element, even things that only directly implicated the other two defendants would establish an element of the crime as to Mr. Gulledge as well. So I think that they're all just tied right together. And, in addition, it seems to me that the strong implication is that they would be incriminating as to all because the defense here was based on the notion of consent or reasonable belief in consent, and if two of the defendants get up and say that they know that there wasn't consent, it's going to be difficult for a jury to believe that the third defendant, Mr. Gulledge, reasonably believed that there was consent. So, you know, in the total picture, we think that the statements were incriminating as to Mr. Gulledge, even though they didn't mention his name. So the question, I think, that we'd like this Court to address is, was the error harmless? And it's our position that, at this point, no one can say with any confidence that the admission of these confessions didn't influence the jury's verdict adversely to Mr. Gulledge. And based on that, under Brecht v. Abramson, and based on that under the McAninch case and its explication of Brecht, this Court is, I think, going to be drawn to the conclusion that we really can't say with any confidence that Mr. Gulledge. You're acting as though we were the State Court, but we're at one level removed. The question for us is, was the State Court unreasonable in the way it applied a Supreme Court precedent? Yes. Would you focus on the end? Why is it unreasonable? And I think we have to look at the errors the State Court found. Were they unreasonable in the way they treated those? And my answer to that question is that the State Court was unreasonable in at least two ways. The first way is that, as I've already alluded to, the State Court ruled that only certain isolated portions of the confessions were illegally admitted. And so it seems to me that its analysis of the harmless error question was flawed right from the outset because the error that it was looking at was not the right error. The error it should have been looking at was an error in admitting the entirety of these confessions. And so I don't think that its analysis is reasonable or reliable in that regard, and that's why I don't think that this Court owes the State Court decision as much deference as would be owed to it if it had been looking at the same error, the error that it should have been looking at. The District Court found harmless error also, right? That's correct. You said a while ago that no one could ever find harmless error, but the District Court has and the State Court has, right? Really? Right. And I've given my reasons why I think we shouldn't take the State Court's determination at face value. As to the District Court, I think there are certain factors that the District Court failed to take into account, and I'd like to just go over those briefly. I mean, the things I think this Court has to look at are, first of all, this is a case that the jury really wrestled with. The jury took three and a half days to reach a verdict in this case. Second, the jury submitted numerous requests to the Court for reread of evidence and to examine the evidence during deliberations. Third, the jury did not convict on every count where the victim herself said there had been a crime. There were the counts involving sodomy and there was a count involving digital penetration, which would have been supported by the victim's testimony, but the jury rejected that testimony, and I think it's significant that those are the only counts that were not mentioned in the inadmissible confessions. The confessions dealt with the rape counts and the oral copulation counts on which the jury convicted, but they did not deal with the counts on which the jury was unable to convict, and I think that's significant. Your client admitted the act of the sex act, right? He just said he had consent. That's correct, and not only that, but the DNA evidence showed that that admission was true. So, aside from these other statements of co-defendants, your client admitted the sex act, right? That's correct. And there was evidence to corroborate that DNA evidence. Yeah, well, he didn't testify and he didn't give a statement to the police, so he didn't make a personal admission in that sense, but his defense was true. He did not testify at all. That's correct. That's correct. So, as far as the jury is concerned, they had the testimony of the victim that cheated by consent, correct? That's right. That's right, and so that was the question for the jury to decide, and nevertheless, as I've stated, their deliberations were protracted. And another factor I think we have to look at, because, I mean, of course, under the California Evidence Code, we can't go and ask the jurors whether the admission of these confessions had any effect on their verdict. That's out of bounds, but I think we have to look to what other windows do we have into the jury's deliberations. And another possible window that we have is the jury instructions, and we've noted in this case that there was no instruction given to the jury to tell them that they could only consider Mr. Franklin's confession and Mr. Lytle's confession against those defendants. They were not limited in their consideration of these confessions, and the instructions left them free to apply the confessions to Mr. Gulledge as well. The other thing I think we need to look at is the nature of the statements themselves, because they didn't only include the admissions of Mr. Lytle and Mr. Franklin. They also included the statements made by the officers, in which they lumped all three defendants together, and they said, this is what you did, isn't it? I mean, I've quoted some of their statements in the briefing. Are they going to believe you, Mr. Franklin, or are they going to believe a couple of other people who were there who openly admit to what they did? In other words, the officer is implying in what he's saying to Mr. Franklin that both of the other people, including Mr. Gulledge, have admitted complicity in crimes here, which, of course, wasn't true. But the jury wasn't told that that wasn't true. And interestingly, the jury was concerned about the truthfulness of the officers during their deliberations. One of the notes the jury submitted to the court said, would you please give us some guidance on the sort of questioning that was done here, particularly with regard to the officers' lack of truthfulness in the questioning. So there are a lot of reasons to think here, in our point of view, that the jury was really struggling with this case, and that's why we don't think that anyone can say with any confidence that these confessions had no influence on the jury's verdict. I mean, the question is, what would this jury have done? It's not a question of, what would I do if I were on the jury, or what would a future jury do? Did it have an influence on this jury? And all the indications are that it probably did, because they were having a very hard time with this case. So those are the points I wanted to make to you this morning, and I'm prepared to submit the matter. Okay. Thank you. Commissioner Brooks. May it please the Court, Peggy Ruffray, Deputy Attorney General for Respondent. This is a harmless error case. We have acknowledged that there was a confrontation clause violation, and it doesn't really matter whether it's analyzed under Crawford or under Bruton. Ultimately, you get to the question of whether it was harmless error. And under the Infovon case that this Court decided, there are two aspects to that when it's an ADPA case. First, the Court asks if the State court's analysis of Chapman was reasonable, and then the Court also considers the Brecht analysis. And it's our position that the State court was absolutely reasonable in concluding that any error was harmless, and under the Brecht analysis, this Court should reach the same conclusion. As the Court has indicated, Mr. Gulledge's defense was consent. And it was a defense, but it was a very hard road to hoe. When the victim had bruises on her face, she had vaginal abrasions, the police found the screwdriver in the park that she said the defendants had threatened her with, and immediately after, she ran down the hill to the other person in the group who had not participated in the attack. She was hysterical. She had no pants on. She immediately reported that she had been raped to this person. So there was this very, very strong evidence that there was no consent. That's what the defendants were facing. That was the kind of evidence that they were facing. And in light of that ---- But no, there was no direct evidence that she gave consent, was there? Absolutely not. You just have to do it by inference, cross-examination, because he didn't take the stand. Correct. Correct. But, I mean, this kind of physical evidence, when you have a victim who has bruises on her face, how can the jury believe that she consented? And when she has abrasions, vaginal abrasions, they find the screwdriver. All this evidence points only to no consent to the ---- Since the defendant did not testify, how did they ---- who raised the ---- how was any consent shown? How did the defense find it? They asked the victim if she consented during her testimony. Did they produce any evidence that she did consent? They ---- through cross-examination, and then also the jury was instructed that there were actually two possible consent defenses. One was that she did not, in fact, consent. One was what's called the Mayberry defense under California law, which is that the defendants might have had a reasonable belief that she consented, even if she didn't. And then also the defense attorney's argument. So through all of that ---- There was no evidence really, may I say, no concrete evidence that she had consented. Correct. Yeah. So that's my point. In light of that evidence, these statements that were made by the co-defendants could not possibly have had any influence on the jury's verdict in this case. And I would point out that the defense attorney was satisfied with the redacted statements. And we can assume from that that Mr. Gulledge's attorney didn't think that those statements were particularly incriminating to him. And counsel has pointed out that the jury deliberated for three days, but it was a 22-day trial. There were three different defendants. There was lots of counts, lots of enhancements. They had to go through a lot of evidence and sift through this. And I think the main reason it took that long is because one of the jurors eventually refused to deliberate. And that's reflected in the jury's notes and in some of the colloquy between the judge and the jurors. At some point, they were deadlocked and the jury, in fact, hung on some of the counts. So I think that is what the length of deliberations is attributed to. How did they break the deadlock? They didn't. The jury was hung on several counts as to Mr. Little. But they were unanimous at least on some counts. Yes, they were unanimous on all the counts involving Mr. Gulledge. So there's no indication that, as to Mr. Gulledge, they had any problem reaching the verdicts that indicated that the victim did not consent and that he was, in fact, guilty, forcible or a copulation enforceable. Unless the Court has any other questions. Thank you. Thank you, Mr. Ruffray. Mr. Brooks, I think you had about five seconds. Did you — is there anything you wish to say in response? Sure. I'd like to point out that counsel's reference to the weapon that she uses as corroboration for the non-consent, with regard to that, the jury didn't find the use of a weapon true. They were unable to reach a verdict on that. And I'm over my time, but unless the Court has any other questions, I'll submit. Okay. Thank you, Mr. Brooks. Thank you. Thank both counsel. And Gulledge v. Ryan is submitted. The next case on the calendar is Bradley v. Shomig.
judges: Noonan, Siler, Bybee